## No. 13,770.

AMOS G. CARR VS. MILLER-MORRIS CANAL, IRRIGATION AND LAND COMPANY, LIMITED.

### SYLLABUS.

1. Plaintiff alleged a verbal contract with defendant to supply him water to irrigate his rice crop. Defendant, for answer, pleaded the general issue, denied each and every allegation of the petition and averred that plaintiff set out to make and did make a "providence crop" on his lands, and refused to take water from defendant company. *Held*: This answer does not set up a special defense which is to be considered as admitting the verbal contract, and then seeking to avoid same by averments of plaintiff's refusal to take water under the contract.

2. The answer is not a plea of confession and avoidance. On the contrary, it is regarded as a special denial of any contract to supply water, and the burden to prove it was on plaintiff.

#### ON APPLICATION FOR REHEARING.

1. In an action for damages arising from the lack of water to raise a crop of rice, the failure of defendant to furnish water to irrigate plaintiff's crop is not sustained by the testimony.

2. The year 1898 was the first year that the defendant sought to irrigate rice crops and it was also plaintiff's first attempt to cultivate rice. There was a want of thorough preparation on the part of each. Plaintiff failed to avail himself of the defendant's offer to furnish water to irrigate and did not, in any respect, seek to minimize the damages.

3. An alleged verbal agreement was embodied in a subsequent written contract without reserving any of the rights now claimed by plaintiff. The terms and conditions of the written contract have not been complied with by the plaintiff.

4. The special plea, as interpreted by the majority of the court, affords no ground upon which the court can hold the defendant liable.

APPEAL from the Eighteenth Judicial District, Parish of Acadia— *DeBaillon, J.*

*Story & Pugh* for Plaintiff, Appellee.

*Philip J. Chappuis* for Defendant, Appellant.

The opinion of the Court was delivered by BREAUX, J.

On Application for Rehearing by BLANCHARD, J.

BREAUX, J.   This is an action to recover damages which plaintiff alleges he has suffered owing to defendant's breach of an irrigation contract.

In 1898 he had become the lessee of a tract of land for the purpose of cultivating rice, which land was subject to irrigation by the canal system of the defendant company.  He avers that he contracted verbally with the defendant to furnish him water to irrigate his crop and that for this water plaintiff bound himself to give one-fifth of all the rice raised on the farm thus irrigated.  He sets out that this verbal agreement entered into in the early part of the year was subsequently embodied in a contract between himself and the defendant company, dated August 2nd, 1898, which he annexes and makes part of his petition. Under this contract, he was to deliver one-fifth of his crop for water supply, but under the verbal agreement nothing had been said (although he alleges that this was the consideration) about the price of the water rental.

He claims to have cultivated one hundred and eighty acres of rice: he avers that he made the necessary levees and other needful works on the number of acres cultivated by him, plowed them and planted good seed rice which came up in due time.

Petitioner urges that the defendant irrigating company failed to do that which it was bound to do under its verbal contract; that the weather was dry and no rice crop could be produced without irrigation; and that he made repeated demands for water.

The defendant sought to meet the issue raised by plaintiff, by pleading the general denial and by specially setting up that plaintiff made a crop that year without artificial irrigation and that he refused to take water from the defendant.

The written contract between the plaintiff and the defendant evidences that the defendant company agreed to furnish water for irrigating the plaintiff's rice crop in 1898.  The plaintiff bound himself to

construct and keep in good order, under the supervision of the manager, all the distributing ditches and other necessary conduits, and that all levees were to be properly built. One of the clauses of the contract contained the stipulation that when plaintiff would need water he was to make application to the defendant company and let it know as near as possible the number of acres to be irrigated and "whenever water is wanted by said second party he shall give notice so that the distribution may be properly regulated." There are other clauses in the contract of which we do not deem it necessary to take notice.

Plaintiff postponed availing himsef of the conditions of the contract. He repeatedly refused to take water and late in July he wrote to the president of the company, who was in Iowa, and received an answer informing him that "the company is doing all they can to supply you with water and are going to the expense of putting in relift in order to do this, so please sign up the lease and we will be responsible if we do not furnish you water. We do not care to go to the expense of putting in a relift without we are sure that you could take water, so we hope that you will not allow this to interfere with your getting water." (Excerpt from letter from President Miller of the company to Carr.) The plaintiff then signed the cntract, but declining, the weight of the testimony shows, to receive water a few days after he had signed. When the written contract was signed, about seventy-five acres of the crop was in a hopeless condition. The remainder in the low land was yet in a condition to be benefitted by irrigation.

The following questions and answers, we think, are pertinent to one of the questions before us for decision, that is, whether plaintiff refused to receive water even after he had signed the contract. Brooks, it seems, was one of defendant's employees, a "water boss," who attended to the delivery of water to the farmers for irrigation:

"Q.—I want to ask you this question—is it not a fact that somewhere about the 5th or 6th of August, at your home on the Webster farm and in the presence of Mr. A. Miller, Mr. Brooks came and asked you if you were going to take water, and you said you were not going to take water?

"A.—He was there.

"Q.—Say 'yes' or 'no.'

"A.—Yes, sir; he was there.

"Q.—You answered this man nothing when he asked you a question?

"A.—He asked me and I told him no. * * * He asked me if I

was going to take water. Said I, 'They have made no preparations. They had not before this prepared to put a lateral through there, and I said, 'How are they going to water me now.' "

At another time in the trial, in rebuttal, this witness said:

"Q.—Did you ever refuse H. H. Lewis to take water from that company?

"A.—No, sir; I never did.

"Q.—Did you ever refuse to take water from Mr. Brooks?

"A.—No, sir.

"Q.—Did you ever say or state in a conversation either to Mr. Miller or Mr. Cardiff that you intended to make a providence crop and did not intend to take water from the company?

"A.—I did not."

The persons just named by plaintiff were witnesses in the case and their accounts, as witnesses, are entirely different from that of plaintiff.

The district court decided that the plaintiff was entitled to judgment for $2520.00 damages, subject to a credit of $500.00. From this judgment defendant prosecutes this appeal.

Plaintiff, as a witness, acknowledged on his cross-examination, that on the different days, the 27th of June and the 7th of July, he refused to sign a contract. He gives his reasons for not signing that it was because defendant would not make preparations to give him water and yet, on the 2nd of August, when all the harm possible had been suffered by his crop, he signed a contract which he says in his testimony contained all the agreement made in the early part of the spring. The agreement referred to is the verbal agreement in question entered into in the early part of the year.

A verbal agreement is as binding as one which has been reduced to writing, but its terms and conditions must be shown by sufficient testimony.

The dilemma, as relates to plaintiff, is that he at first refused to sign a written agreement, and in August following he signed it and on trial testified that it contained all the terms and conditions of the original verbal contract. If this be the case, it is manifest, after reading this written contract, that plaintiff has not complied with it. He was to have the lateral ditches ready to receive the water and also the other necessary water conduits. This is clearly stated in the contract. Neither plaintiff nor defendant was prepared and ready to receive the water

at any time.  Under the written agreement embodying the conditions of the verbal agreement, as we have noted, he was to notify the defendant company when ready to receive the water.  Not only was he never ready, but he did not furnish any notice as required in the contract in controversy, but at all times he positively declined to receive the water.

Defendant sought to prove, and did elicit from two of its witnesses, the statement that plaintiff said, during the season while cultivating his rice, that he intended to rely upon the showers for irrigation, and, it follows, not upon artificial irrigation.  There is also testimony showing that about the time that plaintiff refused to receive water after the written contract had been signed it rained and the crop was thereby irrigated.

There can be no question that if it had rained prior to August 2nd, when the written contract was signed, and the fall of rainwater had sufficiently irrigated plaintiff's crop, defendant would have had no claim for water supply, because, even according to plaintiff's testimony, the verbal agreement included no stipulation regarding any rental, besides neither party, in our judgment, had made any serious attempts to comply with the agreement.

As this was the situation, in our judgment, the plaintiff is not in a position to claim damages for failure "to do" when he, according to his own testimony, had not bound himself to pay any definite consideration, although he had been several times requested to bind himself but which he declined to do before August 2nd.

The writer and organ of the court interpreted strictly defendant's answer and held it to the letter of the special plea interposed therein.  This involved a denial of defendant's plea of general denial, and led to an absolutely different conclusion.  The majority of the court held differently and gave some effect to the plea of general denial, and viewed the special plea as at most shifting the burden of proof and considered that it contained no absolute admission of itself which rendered the defendant liable.

From this point of view, the evidence sustains our decree.  It is worth adding that the year 1898 was the first year that defendant undertook to irrigate rice land and it was also plaintiff's first attempt to plant rice.  There were shortcomings on both sides.  In view of the contract and the testimony, we have arrived at the conclusion that the plaintiff left himself in no position to recover the damages claimed.

It is therefore ordered, adjudged, and decreed that the judgment ap-

pealed from be and it is hereby annulled, avoided and reversed. It is further ordered, adjudged, and decreed that plaintiff's demand be and it is hereby rejected at plaintiff's costs in both courts.

### On Application for Rehearing.

BLANCHARD, J.    The answer filed in this case is not viewed as setting up a special defense in conflict, or inconsistent with, the general issue pleaded.

Defendant in this answer "pleads the general issue and denies each and every allegation in plaintiff's petition contained, and alleges that Amos G. Carr, plaintiff herein, set out to make and did make a 'providence crop' of rice upon the land he rented from Jas. R. Webster during the year 1898, and said Carr refused to take water from the defendant company."

There is here (1) a general denial of the averments of plaintiff's petition; (2) in aid of this general denial is the allegation that plaintiff relied upon Providence—*i. e.*, precipitation from the clouds—for water to make his crop; and (3) so relying, he refused to take water from defendant company in the sense that he failed to make timely contract for water—delayed signing the contract until the damage or most of it had been done.

This by no means is to be regarded as a special defense admitting the verbal contract alleged by plaintiff to have been made in the early part of the year, and then seeking to avoid same by averments of plaintiff's refusal to take water under the contract. It is not a plea of confession and avoidance.

On the contrary, it is looked upon as a special denial of any such contract.

This left it incumbent on plaintiff to prove the verbal contract and he failed to substantiate the allegations of his petition in this regard. The preponderance of evidence is the other way.

The only contract sufficiently established to have been made is the written agreement of August 2, 1898.    This document, which plaintiff avers embodied and was intended to embody the earlier verbal contract, fails entirely to *refer to, or in any way to mention the alleged antecedent verbal contract.*    On the contrary, the obligation assumed by defendant company in this written contract is, clearly, one *in presenti* —to begin only from that date, for the language is: "said company *hereby* agrees to furnish water for proper irrigation of a rice crop," etc.

From that day only, so far as *this* contract is concerned, was there obligation on the part of defendant company to supply water. And the weight of the testimony is that after signing the contract the plaintiff refused to avail himself of his water privileges thereunder—declined to take water. Following the signing there were some heavy rains and plaintiff seems to have trusted to these for a sufficiency of water.

The truth is the real damage to plaintiff's rice crop had been incurred prior to the signing of the contract of August 2, 1898.

By far the greater loss he sustained was inflicted in July. He had relied upon the seasons and they were propitious in May and June, but failed him in July. The weather became dry in that month and a large portion of his crop greatly deteriorated, became practically worthless.

The evidence establishes that before this damage had been thus occasioned plaintiff was solicited to sign the contract—the same he signed after the damage was done—and declined.

If he intended to rely upon irrigation from defendant's canal to meet the requirements of his rice crop he should have seasonably signed the usual or customary contract for water. He had the opportunity to do this. He was asked to do it. He neglected to do so.

He took his chances on a "providence crop" and must abide the consequences.

There was some small damage to his remaining crop, incurred after the 2nd of August (the date when he signed the contract), which might have been averted by irrigation, but since he declined to take water as per his privileges under the contract, he must abide the loss.

Had this plaintiff signed the contract (which he afterwards signed) seasonably, he would have had a case sounding in damages against defendant. While a verbal contract or agreement for a supply of water would have been binding on the parties, such contracts are difficult to establish with certainty and it is unsafe to rely upon them.

Rehearing denied.

BREAUX, J., adheres to views expressed in the original opinion as relates to the averments of the answer, and concurs in the decree.

PROVOSTY, J., takes no part—this case having been submitted and decided prior to his taking his seat on this bench.